[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The Plaintiff, Metallized Engineering, Inc. (hereinafter "MEI") brought this action against the Defendant, the Kirsh Division of Cooper Industries (hereinafter "Kirsh") for services rendered in connection with work performed and delivered to the Defendant. Defendant claims the services rendered were unsatisfactory and not in accordance with their agreement, and, therefore, counterclaims for damages.
The Plaintiff is in the business of metallizing, a process that applies a thin metal surface to one side of a substrate. A common household example of metallizing is the shiny lining found on the inside packaging of potato chips or bags of coffee. MEI agreed to metallize fabric purchased by Kirsh, which was to be used ultimately by Kirsh in fabricating window shades The fabric would be purchased by the Defendant, sent directly to MEI to be metallized, and then shipped to Kirsh for distribution.
The business relationship between the parties began in 1991. Problems occurred when three invoices dated July 13, 1993, totaling $33,002.16 (Pl. Ex. 4-6) were not paid by Kirsh. The Defendant claims that the metallized fabric had pinholes which made the product unusable for window shades. Thereafter, Kirsh discovered that other product from MEI was metallized on the wrong side and Kirsh felt was unusable because of this claimed defect. These two problems, namely, the "pin holes" and "wrong side" error gave rise to this litigation.
MEI argues that the pin hole problem was not its fault and therefore it should be paid for its invoices. There is no question that the pin holes existed, nor is there any real dispute as to how they were caused. The fabric delivered to MEI contained lint and during the metallizing process the lint was metallized instead of the material beneath it. As a consequence, when the metallized lint fell from the fabric, pin hole sized unmetallized areas remained. Kirsh argues that these holes rendered the shades unmarketable since all light was not kept out. The issue here is whether MEI was obligated to inspect, clean, or vacuum the fabric before it applied the metal or was it CT Page 7324 the responsibility, of the fabric supplier to furnish material free of these imperfections. The Court accepts the credible testimony of the Plaintiff's expert, Mr. Wood, that MEI did nothing wrong and that a change in the fabric would be the responsibility of the supplier. The Court does not find that MEI could have discovered the lint problem. The Court accepts the testimony of Mr. Calabrese that the Plaintiff did not agree to clean or vacuum the fabric before it began its process of metallization. In addition, even Mr. Carter, testifying on behalf of Kirsh, stated that his technical people did not feel this was a problem with the metallization, but with the goods
In connection with this claim the Plaintiff seeks consequential damages for unused chemicals, disposal of chemicals and "down time". The evidence presented on these additional damages was speculative at best and not credible. MEI has not sustained its burden in connection with these additional damages and, therefore, they will be denied. As to the outstanding invoices of $33,002.16, however, the Court does find this amount is due the Plaintiff. The Court will not discuss MEI's CUTPA claim since no evidence was introduced relative to this claim and the argument that the non-payment of the invoice constituted a CUTPA violation is without merit.
The final issue relates to the Counterclaim of Kirsh that MEI metallized the wrong side of a quantity of fabric contrary to its instructions. This situation involved a satin fabric which Kirsh wanted metallized on the shiny side. Kirsh introduced a swatch of the material in question (Def. Ex. 2) and it was evident, even to the layman, which side was the shiny side. The Plaintiff contends that the instructions were misleading since the fabric supplier was to provide the fabric with the shiny side on the bottom and MEI metallized the bottom. Unfortunately, the supplier failed to roll the material with the shiny side on the bottom, and MEI metallized the dull side. The Court finds that the instructions were clear and unambiguous. The testimony of Mr. Calabrese that MEI should be excused because the lighting in their plant was not adequate to discern the shiny side from the dull simply is absurd since it was the Plaintiff's obligation to make that determination. The fact that the supplier rolled the fabric incorrectly was certainly no excuse to ignore the explicit instructions of Kirsh. The Defendant is entitled to the value of the goods that were affected, which amounts to $23,028.14. There is an issue as to mitigation but the only evidence presented was that Kirsh received a nominal offer of a $1.00 per yard at one CT Page 7325 time but rejected it with hopes of recouping more money. The Plaintiff offered no evidence in regard to the salvage value of these goods. Therefore, the Court will award Kirsh $23,028.14 on its Counterclaim.
Judgment will enter for the Plaintiff in the amount of $33,002.16 on the Complaint and judgment will enter for the Defendant on the Counterclaim for $23,028.14 without costs to either party.
PELLEGRINO, J.